UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM DARNELL COLLIER, #303214,

        Petitioner,

                             CASE NO. 2:14-CV-13827
v.                               HONORABLE SEAN F. COX

RANDALL HAAS,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner William Darnell Collier ("Petitioner") was convicted of three counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(f), and one count of unlawful imprisonment, MICH. COMP. LAWS § 750.349(b), following a jury trial in the Kalamazoo County Circuit Court. He was sentenced, as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 25 to 60 years imprisonment on those convictions in 2010. In his habeas petition, as amended, he raises claims concerning the trial court's denial of a mistrial motion, the effectiveness of trial and appellate counsel, the validity of his sentence, and the trial court's delay in notifying him of its most recent collateral review decision. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus, denies a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his sexual assault of a female acquaintance at his residence in Kalamazoo, Michigan in September, 2009. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant's convictions arise from an arrangement in which the victim agreed to have sexual intercourse with defendant in exchange for crack cocaine. The victim and defendant procured the drugs and returned to defendant's apartment. The victim and defendant smoked the crack cocaine and engaged in consensual sexual conduct. After the crack cocaine was gone, the victim and defendant decided to obtain more crack cocaine and each contributed $10 toward that endeavor. Defendant drove the victim to a place where drugs could be purchased and the victim purchased the drugs. Defendant and the victim returned to defendant's apartment and smoked the crack cocaine. The victim testified that after smoking the crack cocaine she informed defendant she was leaving. Defendant responded by striking her in the head and telling her to remove her clothing. Defendant attempted to forcibly engage in vaginal intercourse with the victim and also forced her to perform oral sex. At one point, the victim grabbed a screwdriver and attempted to stab defendant and escape, but defendant grabbed her arm before she could stab him and struck her. Eventually, the victim was able to escape and later reported the incident to police.

*People v. Collier*, No. 299928, 2011 WL 5870058, *1 (Mich. Ct. App. Nov. 22, 2011) (unpublished).

On state court collateral review, the trial court provided a more detailed description of the trial testimony. Those facts are as follows:

> The victim testified that she had agreed to have sex with Collier in exchange for crack cocaine. He picked her up in an area of Kalamazoo he knew to be frequented by prostitutes. The victim knew Collier from previous interactions. Neither indicated anyone else was present when Collier picked up the victim. They purchased the crack at the apartment of someone they both knew, Michelle. Collier had dated Michelle. Collier and the victim smoked crack cocaine together in Collier's apartment, and attempted to have consensual sex. However, the victim testified, Collier was unable to maintain an erection because of the crack cocaine so they did not succeed in having sex. After some time, they left Collier's apartment together to get more crack cocaine at Michelle's, and returned to Collier's apartment. When the two of them had smoked all of the crack cocaine, the victim announced that she was going to leave and proceeded to put on her shoes. Collier struck the victim on the

back of her head and the face and told her she was not going to leave until she performed oral sex on him. The victim started to comply, and then Collier made her get on the bed and attempted again to have intercourse. As before, the victim explained, Collier could not maintain an erection because of the crack cocaine. In spite of this, Collier insisted on repeated attempts at oral and vaginal sex. The victim was afraid because Collier repeatedly told the victim he would kill her.

At one point, the victim spotted a screwdriver near the chair where Collier was sitting. She picked up the screwdriver as she leaned over to perform oral sex on Collier. The victim was going to stab Collier with the screwdriver in order to get away, but he grabbed her hand and struck her again, causing her to bleed from a wound on her head. Collier threw the victim on the bed and attempted vaginal sex. The victim testified that Collier eventually succeeded, and got off of her. She took that opportunity to grab her clothes and run out of the bedroom and then out of the apartment.

After leaving Collier's apartment, the victim stopped at the nearby apartment of an acquaintance for help getting a ride home to the north side of Kalamazoo. There were a number of people there that the victim did not know. The victim succeeded in returning to her neighborhood. She was going to go to Michelle's, but saw Collier's car parked outside so she went to a friend's house nearby instead. Frank Ricky Spencer, the friend, testified the victim appeared in shock, was bloody and beat up, and said she had been raped. The victim picked up a length of metal pipe and commented that she wanted to get revenge on the man who raped her. Spencer testified he and his friends wrestled the pipe away from the victim, and tried to talk her into going to the hospital and calling the police.

The victim left Spencer's and went back to Michelle's apartment, a block away. At Michelle's apartment, the victim found and confronted Collier. The victim had the pipe she picked up at Spencer's, and threatened Collier with it. Others held her back and Collier was asked to leave. No one, including the victim, contacted police at that time.

The next day, the victim saw someone in her neighborhood she knew to be an undercover police officer. She told him she had been raped. The undercover officer called for another officer to come take the victim's statement and transport her for medical treatment. A "rape kit" was done, and staples were placed to close the wound on the victim's head. The victim did not know Collie's address, but rode along with an officer and identified Collier's residence.

Collier testified that the two agreed to an exchange of sex for money, and smoked crack cocaine together. He testified that they went to his apartment, and some consensual sexual activity took place. They left to get more crack cocaine. After smoking the additional crack cocaine, the victim started "tweaking" and not

responding to what Collier was saying, which caused Collier to become annoyed with the victim. Collier stated he pushed the victim, causing her to fall and hit her head on the bed frame. The victim got up on her own and onto the bed, and Collier, noticing she was bleeding, tried to help her but she refused. The victim got angry with Collier, the two began arguing, and the victim left the apartment. Collier asserted on cross-examination that the victim was lying in order to get revenge on him.

*People v. Collier*, No. B-2009-2038-FC, *2-4 (Kalamazoo Co. Cir. Ct. April 12, 2013).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that: (1) the trial court erred in denying his mistrial motion after a police officer witness referenced Petitioner's parole agent, and (2) trial counsel was ineffective for failing to impeach the victim's testimony and failing to object to hearsay testimony. The court denied relief on those claims and affirmed Petitioner's convictions. *Collier*, 2011 WL 5870058 at *1-3. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Collier*, 491 Mich. 920, 812 N.W.2d 737 (2012).

In 2013, Petitioner filed his first motion for relief from judgment with the state trial court asserting that: (1) he had newly-discovered evidence that the victim lied and had a prior history of extortion and threats of false rape charges which would have affected the outcome at trial, (2) trial counsel was ineffective for failing to locate witnesses and raise an alibi and actual innocence defense, and (3) appellate counsel was ineffective for failing to raise the foregoing issues on appeal. The trial court denied relief on the claims pursuant to Michigan Court Rule 6.508(D)(3) because Petitioner failed to demonstrate cause and actual prejudice. The court also stated that it would not reconsider trial counsel's effectiveness because that issue was raised on appeal and that Petitioner failed to establish that appellate counsel was ineffective. *Collier*, No. B-2009-2038-FC at *8-9

4

(4/12/13 order). Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Collier*, No. 317672 (Mich. Ct. App. March 14, 2014). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Collier*, 497 Mich. 854, 852 N.W.2d 176 (2014).

In October, 2014, Petitioner filed his initial pro se habeas petition raising claims concerning the denial of a mistrial motion and the effectiveness of trial and appellate counsel. Shortly thereafter, he moved for a stay and abeyance of his case so that he could return to the state courts to exhaust his remedies on a "*Missouri v. Frye*" issue (an un-communicated plea offer). The Court granted Petitioner's motion, stayed the proceedings, and administratively closed the case in December, 2014.

Petitioner returned to the state trial court and filed a second motion for relief from judgment asserting that: (1) he obtained newly-discovered evidence of an un-communicated plea offer and trial counsel was ineffective for failing to inform him of that offer, and (2) appellate counsel was ineffective for failing to raise the foregoing issue on appeal. The trial court denied relief on those claims finding that they lacked merit because the plea offer information was not newly-discovered and, even if it were, Petitioner failed to show that he would have accepted the offer given his ongoing protestations of innocence. *People v. Collier*, No. B-09-2038-FC (Kalamazoo Co. Cir. Ct. Jan. 7, 2015). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was dismissed as untimely because it was not filed "within the time period required by MCR 7.502(G)(3)." *People v. Collier*, No. 329978 (Mich. Ct. App. Dec. 29, 2015). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Collier*, 500 Mich. 864, 885 N.W.2d 278 (2016).

5

Petitioner thereafter moved to re-open this habeas case to proceed on an amended petition raising additional claims concerning the alleged un-communicated plea offer and the effectiveness of trial counsel, the effectiveness of appellate counsel, the validity of his sentence, and the trial court's delay in notifying him of the denial of his motion for relief from judgment. The Court granted that motion and re-opened the case. Respondent subsequently filed an answer to the amended habeas petition contending that it should be denied because several claims are procedurally defaulted and all of the claims lack merit.

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in

assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    Analysis

### A.    Direct Appeal Claims

#### 1.    Mistrial Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court denied his mistrial motion which was made after a police officer witness, Michael Skurski, referenced Petitioner's parole agent while testifying at trial. The Michigan Court of Appeals described the relevant facts as follows:

> Here, during the direct examination of Skurski, the prosecutor was asking him about what he observed defendant doing on the day after the sexual assault. Skurski explained that he saw defendant outside washing a car. The prosecutor then asked Skurski what he did next, anticipating that the officer would say he approached defendant. Instead, Skurski stated: "Sergeant Kozal told me that he had been in contact with defendant's parole agent." Immediately after Skurski said "parole agent" the prosecutor cut him off and stated: "No, okay. We don't want to talk about that." After the prosecutor interrupted Skurski, defense counsel asked to approach the bench. The jury was dismissed, and defense counsel moved the trial court for a mistrial. After hearing arguments from both parties, the trial court denied defendant's motion and thereafter, upon the jury's return to the court room, instructed the jury to disregard the witness's last answer.

*Collier*, 2011 WL 5870058 at *1. Respondent contends that this claim lacks merit.

A trial court has broad discretion to grant or deny a motion for a mistrial – and a mistrial is only warranted upon a showing of manifest necessity. *See Arizona v. Washington*, 434 U.S. 497, 506-10 (1978) (mistrial due to deadlocked jury); *Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994). "Manifest necessity" means a "high degree" of necessity. *Arizona*, 434 U.S. at 506. The Supreme Court has confirmed the significant deference due a trial court's decision to grant or deny a mistrial, as well as the further deference due the state appellate court's decision on that issue, on federal habeas review. *See Renico*, 559 U.S. at 772-74 (reversing grant of habeas relief on claim contesting state trial court's grant of a mistrial due to a deadlocked jury).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Because this case essentially revolved around a credibility contest between the victim and defendant, whether defendant was denied a fair trial by Skurski injecting defendant's parole status into evidence is a close question. However, after considering all the circumstances, we conclude that the trial court's decision to deny defendant's motion was not outside the range of principled outcomes.

> Initially, as both the trial court and defense counsel acknowledged, we note that the improper testimony was completely unresponsive to the question asked and therefore, was not solicited by the prosecution. The prosecution asked defendant a proper question, and the prosecutor could not have anticipated that the posed question would solicit a response disclosing defendant's parole status. And in addition, we find significant the proactive response by the prosecutor who immediately interrupted Skurski and stated in the presence of the jury that this was not to be "talked about." In so doing, the prosecutor did everything possible to immediately remediate the error. Further, any prejudice caused by the reference to defendant's parole agent was cured by the trial court's prompt instruction to disregard Skurski's comments. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Bauder*, 269 Mich App 174, 195; 712 NW2d 506 (2005). Because the prosecutor was proactive in attempting to minimize the error and the trial court instructed the jury to disregard the testimony, we conclude that even under the greater scrutiny given to police officer testimony, defendant was not prejudiced to the extent that his trial was not fair.

*Collier*, 2011 WL 5870058 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. In determining whether an improper statement warrants a mistrial, the United States Court of Appeals for the Sixth Circuit considers: (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether a limiting instruction was immediate, clear, and forceful, (4) whether any kind of bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant. *United States v. Massengill*, 769 F. App'x 342, 347 (6th Cir. 2019) (citing cases). In this case, the police officer's reference to Petitioner's parole agent was unsolicited and non-responsive, the prosecutor's questioning was reasonable and the prosecutor stopped the witness from further comments, the trial court immediately instructed the jury to disregard the parole agent reference, there is no evidence of bad faith by the prosecutor, and the reference did not directly concern the evidence. Given such circumstances, Petitioner fails to establish that manifest necessity warranted a mistrial. The trial court acted well within its discretion in denying the mistrial motion and instead instructing the jurors to disregard the remark. Jurors are presumed to follow a court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). More importantly, for purposes of federal habeas review, the Michigan Court of Appeals' decision to that effect is reasonable. Habeas relief is not warranted on this claim.

**2.     Ineffective Assistance of Trial Counsel Claim**

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to impeach the victim's testimony and failing to object to hearsay. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of trial counsel. To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court has confirmed that a federal court's consideration of an ineffective assistance of counsel claim arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their

performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. Rather, the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*.

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Strickland* standard, and denied relief. The court explained in relevant part:

> Defendant first argues that trial counsel was ineffective because he did not impeach the victim with her inconsistent testimony from defendant's parole revocation hearing. Defendant also argues that the victim's statement at the previous hearing, that she would have agreed to have sex with defendant if he would have had more money, should have been introduced to give the jury a complete context. From the record, it appears the inconsistent portions of the victim's testimony did not concern the actual sexual assault, the details of which remained consistent throughout the victim's testimony. The inconsistencies were minor; the fact that the victim previously testified that a condom was used during the consensual sex act and that she bought the cocaine with her own money at a previous hearing and then omitted the information about the condom and testified that her and defendant both contributed money to the cocaine at trial does not significantly cast doubt on the victim's credibility. There is a strong presumption that defense counsel's performance constituted sound trial strategy, and defense counsel's decision not to impeach the victim with previous testimony given at a parole hearing could be considered reasonable trial strategy because it would prevent the jury from learning that defendant was on parole. *People v. Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).
>
> Further, defendant cannot establish that any error by his attorney was prejudicial to his rights because defendant did not demonstrate that there is a reasonable probability that the outcome of the trial would have been different but for counsel's failure to impeach the victim with her inconsistent testimony. *Strickland v. Washington*, 466 US 668, 694; 104 S Ct 2052; 80 LEd2d 674 (1984). Even without impeachment of the victim, the jury was aware that the victim was a prostitute and that she traded sex for drugs or money. Thus, impeachment was not necessary to provide context to the jury because it already knew about the context in which the assault occurred.
>
> Next, defendant argues that trial counsel was ineffective because counsel failed to object to the introduction of inadmissible hearsay during the victim's testimony.

During the victim's testimony, she described going to confront defendant later on the day that she was sexually assaulted. The victim testified that a woman opened the door. When the victim told the woman at the door that defendant "raped" her, the woman said "I believe you" and "you're not the first person that said this about him."

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Assuming defense counsel was deficient for failing to object to the hearsay statements, defendant has not established that the testimony prejudiced his case. No follow up questions regarding the woman's statement about defendant were asked and the statement was not emphasized during the rest of the trial. If defense counsel would have objected, it might have drawn additional attention to the allegation. Further, the woman at the door did not even say that she knew defendant previously sexually assaulted someone, she merely stated she had heard that about defendant before. Additionally, the victim specifically and unequivocally testified to the acts of sexual assault that occurred. In a criminal sexual conduct case, the victim's testimony alone is sufficient to support a conviction. *People v. Smith*, 205 Mich App 69, 71; 517 NW2d 255 (1994). In this case, the jury clearly believed the victim's testimony because it convicted defendant; it is unlikely that a passing reference to a rumor about previous sexual assaults carried out by defendant was the determining factor. Accordingly, we find that defendant failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different but for counsel's failure to object to the testimony. Defendant has not satisfied his burden of proving prejudice and has consequently failed to establish he was provided ineffective assistance of counsel.

*Collier*, 2011 WL 5870058 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to the victim's impeachment, trial counsel may have reasonably decided not to impeach the victim with her prior testimony from Petitioner's parole revocation hearing in order to avoid drawing attention to the fact that he was on parole, particularly since the discrepancies in her testimony were relatively minor and did not concern the assault itself. Moreover, Petitioner fails to show that he was prejudiced by counsel's conduct relative to such impeachment given that the jury was well aware that the victim was a drug user who exchanged sex for money and drugs such that the jury had reason to question her

credibility. Second, as to the hearsay, trial counsel may have reasonably decided not to object to the remark in order to avoid drawing attention to it. Nonetheless, even if counsel erred by failing to object, Petitioner fails to show that he was prejudiced by this isolated remark given the victim's testimony, her friend's corroboration, and the evidence of the victim's physical injuries. Petitioner fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct as required under the *Strickland* standard. The Michigan Court of Appeals' decision is reasonable. Habeas relief is not warranted on this claim.

### B. First Motion for Relief from Judgment Claims

### 1. Ineffective Assistance of Trial Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to locate witnesses and raise an alibi and actual innocence defense. Petitioner raised this claim (along with an underlying newly-discovered evidence claim) in his first motion for relief from judgment. The state trial court described the relevant facts as follows:

> Collier presented affidavits of LaShone Bedford and Toni V. Jones. Neither person was mentioned during the trial. Bedford stated in her affidavit that she was with the victim when Collier picked the victim up. Bedford saw the victim again later, and the victim was angry with Collier for hitting her and was "going to get him back." Bedford stated the victim "has a way of conning men (that she prostitutes with) out of money by threatening to accuse them of rape." Jones stated in her affidavit that the victim came to a friend's apartment where Jones was at "a small gathering." Jones stated the victim's head was bandaged and she stated Collier had "smacked her upside the head" and "kicked her out of his apartment." Jones further explained that the victim "never mentioned anything about (Collier] raping her," and that if the victim had mentioned that they would have called the police. Like Bedford, Jones stated that the victim had threatened in the past to "file rape charges against [men] if they refused to give her money." Collier provides no information about how and when Bedford and Jones were identified or located.

*Collier*, No. B-2009-2038-FC, p. 5 (4/12/13 order). Respondent contends that this claim is barred by procedural default and that it lacks merit.

15

With regard to procedural default, it is well-settled that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural default issue is somewhat complicated, intertwined with the substantive issues, and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the claim's merits.

As discussed, in order to establish that trial counsel was ineffective, a habeas petitioner must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when

it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, Petitioner fails to establish that trial counsel was ineffective for failing to locate Bedford and Jones. First, Petitioner fails to show that counsel did not reasonably investigate his case. Petitioner offers no evidence about the scope of counsel's investigation and/or whether counsel knew or had reason to know of Bedford or Jones at the time of trial. There is no mention of them in the state court record before they signed their affidavits in 2013. Petitioner does not indicate how or when he located Bedford or Jones, although their affidavits seem to indicate that they knew him at the time of the incident.

Second, even assuming that trial counsel erred by failing to locate Bedford and Jones, Petitioner fails to show that he was prejudiced by counsel's conduct. The affidavits, signed more than three years after the incident and two years after trial, are inherently suspect. *See, e.g., Schlup v. Delo*, 513 U.S. 298, 331 (1995), and such statements are viewed with "a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring); *Harris v. Smith*, No. 2:12-CV-14210, 2013 WL 3873168, *5 (E.D. Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion."). Moreover, Petitioner was not deprived of a substantial defense. The affidavits address the credibility of the victim and do not concern the facts of the crime itself, nor do the affidavits establish an alibi or actual innocence. Trial counsel thoroughly cross-examined the victim, challenged her credibility and her version of events, and presented Petitioner's own testimony in support of his consent defense. Consequently, the jury was well aware of the victim's credibility issues and the competing versions of what transpired on the night of the crime. Given such circumstances, there is no reasonable probability that Bedford's and Jones' possible testimony would have affected the outcome at trial. Petitioner thus fails to establish

that trial counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted on this claim.

## 2.    Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing ineffective assistance of trial counsel claim on direct appeal.  Respondent contends that this claim lacks merit.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To prevail on a claim of ineffective assistance of appellate counsel, a petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal.  *Strickland*, 466 U.S. at 687.  It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate

counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

In denying Petitioner's first motion for relief from judgment, the state trial court denied relief on this claim finding that the underlying collateral review claims lacked merit such that appellate counsel was not deficient. *Collier*, No. B-2009-2038-FC, p. 9 (4/12/13 order). The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the state court's decision and this Court's determination that the underlying collateral review claims lack merit, Petitioner cannot establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Habeas relief is not warranted on this claim.

### C.      Second Motion for Relief from Judgment Claims

#### 1.      Un-Communicated Plea Offer & Ineffective Assistance of Trial Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecution made a plea offer that was not communicated to him and trial counsel was ineffective for failing to inform him of that offer. Respondent contends that this claim is barred by procedural default and that it lacks merit.

As previously explained, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson*, 351 F.3d at 215 (citing *Lambrix*, 520 U.S. at 525). In this case, the procedural default issue is again

somewhat complicated, intertwined with the substantive issues, and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the claim's merits.

Again, as discussed, in order to establish that trial counsel was ineffective, a habeas petitioner must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012). A criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In order for a defendant to establish that he or she was prejudiced by an un-communicated plea offer, the defendant must prove that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.* at 164.

In denying Petitioner's second motion for relief from judgment, the trial court denied relief on this claim ruling that Petitioner failed to show that the un-communicated plea offer was "newly-discovered" because it could have been discovered earlier with reasonable diligence and further ruling that Petitioner failed to show that he would have accepted a plea offer given his ongoing declarations that the victim was lying and that he was innocent. *Collier*, No. B-2009-2038-FC, pp. 1-2 (1/7/15 order).

The state court's denial of relief is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  As an initial matter, the Court notes that it is somewhat skeptical that trial counsel failed to communicate the plea offer to Petitioner given that the criminal pretrial summary form indicates that Petitioner was present (with a notation "in prison") and the form was part of the trial record after being signed by both the prosecutor and trial counsel, *see* Pet. App'x B, and given that Petitioner fails to submit an affidavit or other evidence from trial counsel in support of this claim.

Nonetheless, assuming that Petitioner was not informed of the plea offer, he fails to show that he would have accepted the offer and pleaded guilty given his ongoing assertions of innocence, his characterization of the victim as a prostitute, manipulator, con artist, and liar, and his belief that he was railroaded and subject to a false police report and malicious prosecution.  *See, e.g.*, 6/24/10 Trial Tr., p. 560; 8/16/10 Sent. Tr., pp. 6-7, 10-11, 15-16.  Petitioner thus fails to establish that he was prejudiced by counsel's alleged failure to inform him of the plea offer.  *See, e.g., Jackson v. United States*, 101 F. App'x 583, 686 (6th Cir. 2004) (defendant failed to prove prejudice from counsel's alleged failure to inform him of plea offer where he steadfastly refused to admit his guilt). At a minimum, the trial court's decision to that effect is reasonable.  Habeas relief is not warranted on this claim.

### 2.    Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the issues raised in his second motion for relief from judgment on direct appeal.  Respondent contends that this claim lacks merit.

As explained, to prevail on a claim of ineffective assistance of appellate counsel, a petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal.  *Strickland*, 466 U.S. at 687.  Again, however, a

criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones*, 463 U.S. at 751.

In denying Petitioner's second motion for relief from judgment, the state trial court denied relief on this claim essentially finding that it lacked merit because the underlying collateral review claims (newly-discovered evidence of a plea offer and ineffective assistance of trial counsel) lacked merit. *Collier*, No. B-2009-2038-FC, pp. 1-2 (1/7/15 order). The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the state court's decision and this Court's determination that the underlying claims lack merit, Petitioner cannot establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *Shaneberger*, 615 F.3d at 452 (citing *Greer*, 264 F.3d at 676). Habeas relief is not warranted on this claim.

### 3. Sentencing Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in scoring Offense Variable 13 ("OV 13") of the state sentencing guidelines and improperly relied upon information neither admitted by him nor proven beyond a reasonable doubt. Respondent contends that this claim is unexhausted and now procedurally defaulted and that it lacks merit.

As previously explained, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson*, 351 F.3d at 215 (citing *Lambrix*, 520 U.S. at 525). Again, the procedural default issue is somewhat complicated, intertwined with the substantive issues, and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the claim's merits.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state trial court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums of life imprisonment. *See* MICH. COMP. LAWS §§ 750.520b(1)(f), 750.359b, 769.12. Consequently, those sentences are insulated from habeas review absent a federal constitutional violation.

Petitioner raised this issue in a motion to correct an invalid sentence before the state trial court (but did not pursue the claim on direct appeal or collateral review). The trial court conducted an evidentiary hearing and denied relief on this claim finding, in relevant part, that Offense Variable 13 was properly scored at 25 points. *See* 1/21/11 Evid. Hrg., pp. 36-42.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner's claim that the trial court erred in scoring OV 13 (or any other portion) of the Michigan sentencing guidelines is not cognizable on habeas review because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue which is not cognizable on federal habeas review); *see also Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Alleged errors in scoring the offense variables and determining the sentencing guideline range do not therefore warrant federal habeas relief.

Additionally, to the extent that Petitioner contests the state court's interpretation of state law regarding the offense variables and the application of that law, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Petitioner thus fails to state a claim upon which relief may be granted as to this issue.

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (citing *Townsend*); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). Petitioner makes no such showing. Rather, the record shows that Petitioner had a sentencing hearing, as well as a post-sentencing evidentiary hearing, before the state trial court with an opportunity to challenge the sentencing information. He also could have, but did not, challenge his sentence on direct appeal or collateral review in the state courts. Petitioner fails to establish that the state trial court relied upon materially false or inaccurate information in imposing his sentence which he had no opportunity to correct. Habeas relief is not warranted on this claim.

### 4. Late Notice of Collateral Review Decision Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court failed to provide him with a timely notice of its decision denying his second motion for relief from judgment, thereby preventing him from pursuing a timely appeal of that decision. Respondent contends that this claim does not provide a basis for habeas relief.

There is no federal constitutional right to state collateral review of state criminal convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)). Consequently, allegations of deficiencies in state collateral review proceedings fall outside the scope of federal habeas review because they involve "'collateral matters' as opposed to 'the underlying state conviction giving rise to the prisoner's incarceration.'" *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (quoting *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1986)) (involving claim challenging the denial of the opportunity to present recantation evidence in a state post-conviction proceeding); *see also Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Alley v. Bell*, 307 F.3d 380, 386-87 (6th Cir. 2002). Petitioner thus fails to state a claim upon which habeas relief can be granted as to this issue. Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the

claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85. Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a). This case is **CLOSED**.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 8, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 8, 2019, by electronic and/or ordinary mail.

s/Kristen MacKay for Jennifer McCoy
Case Manager